# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TAWNDRA L. HEATH,                                )
                                                 )
            Plaintiff,                           )      Case No.: 2:17-cv-2869-GMN-BNW
    vs.                                          )
                                                 )             **ORDER**
TRISTAR PRODUCTS, INC., a Pennsylvania )
Corporation; ZHONGSHAN JINGUANG       )
HOUSEHOLD APPLIANCE                   )
MANUFACTURE CO., LTD., a foreign      )
corporation;                          )
                                                 )
            Defendants.                          )
_____)

Pending before the Court is Defendant Tristar Products, Inc.'s ("Defendant's") Motion in Limine, (ECF No. 82). Plaintiff Tawndra Heath ("Plaintiff") filed a Response, (ECF No. 85), and Defendant filed a Reply, (ECF No. 88).[1]

Also pending before the Court is Defendant's Motion for Summary Judgment, (ECF No. 78). Plaintiff filed a Response, (ECF No. 86), and Defendant filed a Reply, (ECF No. 93).

For the reasons stated below, Defendant's Motion in Limine is **DENIED**, and Defendant's Motion for Summary Judgment is **DENIED**.

## I.   BACKGROUND

This case arises from injuries that Plaintiff suffered when the lid of her Power Pressure Cooker, Model No. PPC770 (the "Cooker")[2] allegedly exploded open after she used it to

---

[1] This District's Local Rule 16-3 declares that replies to a motion in limine "will be allowed only with leave of the court." D. Nev. L.R. 16-3. Here, Plaintiff does not move to strike Defendant's Reply in support of its Motion in Limine; and the Reply does not address issues that go beyond the Motion, (ECF No. 82). The Court thus will permit the Reply in this limited instance. But the parties are instructed to reference, and comply with, the District's Local Rules for future motions in limine.

[2] The Cooker has three main components: a base, a removable inner pot, and a lid. (MSJ 4:12–20, ECF No. 78). "The lid has an internal circumferential gasket, two valves, and set of metal locking tabs." (*Id.*).

prepare corned beef brisket. (Sec. Am. Compl. ¶¶ 4–20, ECF No. 62); (Dep. Tawndra Heath 31:16–33:20, Ex. C to Mot. in Limine ("MIL"), ECF No. 82-3). Defendant was the seller and distributor of that Cooker. (Sec. Am. Compl. ¶ 9).[3]

Plaintiff states that she prepared the corned beef brisket in the Cooker through two cooking cycles at her home. In the first cycle, she set the Cooker for a sixty-minute cook cycle, then "left for . . . Bible study." (Dep. Tawndra Heath 34:3–36:24, Ex. C to MIL). When she returned, she saw that the corned beef was not finished. She accordingly set it for a second cooking cycle—following the same steps of using the Cooker as the first cycle. (*Id.* 39:5–42:16). Plaintiff states that when she closed the Cooker's lid with each cycle, it did not take any force at all. (*Id.* 35:23–25).

After the first cycle, Plaintiff opened the lid easily and without issue. (*Id.* 41:3–12). For the second cycle, Plaintiff states that she approached the Cooker roughly fifteen to twenty minutes after it emitted a "beeping noise" to indicate the cook cycle was complete. (*Id.* 44:1–45:5). However, when she attempted to open the Cooker's lid, she claims that water exploded out onto her face, neck, chest, and arm. (*Id.* 53:23–56:19). Plaintiff then went to the hospital, and received treatment for first, second, and third-degree burns. (Report of Benjamin Rodriguez, M.D., Ex. 3 to Resp., ECF No. 86-3).

On October 12, 2017, Plaintiff initiated this lawsuit against Defendant in the Eighth Judicial District Court for Clark County, Nevada. (Compl. at 1, Ex. 1 to Pet. Removal, ECF No. 1-1). Defendant removed the case to this Court on November 15, 2017. (Pet. Removal, ECF No. 1). Plaintiff currently asserts four claims for relief against Defendant: (1) negligence; (2) breach of warranty; (3) strict products liability; and (4) violation of Nevada consumer

---

[3] Plaintiff's Second Amended Complaint states that the manufacturer of the Cooker was a foreign corporation, Zhongshan Jinguang Household Appliance Manufacture Co., Ltd. (Sec. Am. Compl. ¶ 10).

protection laws. (Sec. Am. Compl. ¶¶ 21–58).  She also seeks punitive damages against

Defendant. (*Id.* ¶¶ 59–64).

To support her claims for relief, Plaintiff retained John Pratt, Ph.D. as an expert witness

to inspect the Cooker, determine if any defects existed, and provide an opinion about whether

such defects could have caused Plaintiff's injuries.  Through the instant Motion in Limine,

(ECF No. 82), Defendant now seeks to exclude Dr. Pratt's expert opinions.  Defendant also

moves for summary judgment in its favor on all of Plaintiff's claims. (Def.'s Mot. Summ. J.

("MSJ"), ECF No. 78).

## II.  <u>LEGAL STANDARD</u>

### A.  Motion in Limine

In general, "[t]he court must decide any preliminary question about whether . . .

evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for

Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for

admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483

U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding

admissibility determinations that hinge on preliminary factual questions] be established by a

preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has

developed pursuant to the district court's inherent authority to manage the course of trials."

*Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FRE 103(c)).  In limine rulings "are

not binding on the trial judge, and the judge may always change his mind during the course of a

trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41.

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler

Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be

used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*, 539 F.

Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

### B. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the

nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   **DISCUSSION**

### A. **Motion in Limine**

Defendant argues that Dr. Pratt's expert opinions are inadmissible based on Federal Rules of Evidence 702 and 403 as well as *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 591 (1993). (MIL 1:22–25, ECF No. 82). More specifically, Defendant advances three reasons to exclude Dr. Pratt's expert opinions: (1) his opinions about the Cooker's defectiveness do not fit the facts in this case; (2) his opinions are not the product of reliable scientific methodology nor based on sufficient data; and (3) he is not an expert with regard to warnings or human factors, and thus cannot testify about "misleading information in the [Cooker's] Owner's Manual." (*Id.* 8:24–13:18).

The Court's below discussion addresses each reason in turn. However, the Court first notes that Defendant does not directly challenge Dr. Pratt's qualifications to render expert opinions concerning the mechanics and defects of the Coker. Based on Dr. Pratt's applicable engineering background, training, experience, and education, the Court finds him to possess sufficient qualifications to proffer expert testimony here. (*See* Expert Report of John Pratt,

Ph.D. at 3–4, Ex. 1 to Resp., ECF No. 85-1); (Curriculum Vitae, Ex. 1 to Expert Report, ECF No. 85-1); (Prior Testimony, Ex. 2 to Expert Report, ECF No. 85-1); *see* Fed. R. Evid. 702.

### 1. *Relevance of Dr. Pratt's Testimony*

Defendant's first reason to exclude Dr. Pratt's expert opinion focuses on his October 17, 2018 report, which details four scenarios that could have occurred with Plaintiff's Cooker and caused her injuries. (MIL 8:1–10:12).  Scenario 1 concerns the potential for Plaintiff to misguidedly close the Cooker lid by rotating it and only "marginally overlapping the locking lugs and compressing the gasket." (Expert Report of John Pratt, Ph.D. at 10–11, Ex. 1 to Resp.).  Scenario 2 involves a pot lid liner that is "mistakenly assembled into the lid upside down." (*Id.* at 11).  In Scenario 3, Plaintiff could have attached the Cooker's lid by initially closing it to the fully locked position, but "backing off the lid . . . when the pressure [inside] was between about .2 and 1.0 psig." (*Id.* 11–12).  Finally, Scenario 4 could occur if Plaintiff initially secured the lid, yet opened it "shortly after completion of the second cook cycle when the internal pressure had dropped below about 3 psig" but still was pressurized to some extent. (*Id.* at 12).  Each of these scenarios, according to Dr. Pratt, would allow Plaintiff's Cooker to pressurize during a cooking cycle and explosively separate on its own or when the user rotates the lid. (*Id.* 10–12).

Defendant contends that these four scenarios do not fit the facts of this case because they contradict Plaintiff's deposition testimony as discussed below.  Thus, Defendant invokes Federal Rule of Evidence ("FRE") 702 to argue that Dr. Pratt's expert opinions should be excluded as unhelpful to the jury. (*Id.*).  That is, Federal Rule of Evidence 702 states that the court may not admit expert testimony unless it determines that it will "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).  To be helpful to the jury for purposes of Rule 702, the expert testimony must be "'tied to the facts' of the

particular case." *See Lewandowski v. Taser Int'l, Inc.*, No. 2:06-cv-0146-LDG-RJJ, 2009 WL 10692836, at *4 (D. Nev. Aug. 10, 2009) (citing *Daubert*, 509 U.S. at 591).

Regarding Scenarios 1 and 4, Defendant claims that Plaintiff's deposition testimony negated such possibilities because her testimony unequivocally states that she closed the Cooker and heard a "click" to indicate the lid's fully locked position. (MIL 5:10–17, 6:23–7:5). Additionally, Defendant draws attention to Plaintiff's testimony that she did not have to use any force at all to open the lid before it explosively separated, which Defendant argues would counter Dr. Pratt's tests showing how the lid could explode open while pressurized. (*Id.*). Plaintiff's actual testimony, however, does not reveal unequivocal statements about fully locking the Cooker's lid or the amount of force used to open it. Her testimony instead shows that she was unsure if she fully closed the Cooker or heard a click; and she doesn't recall the level of force she used, just that it "was easy to open" and "not hard." (*See* Dep. Tawndra Heath 35:7–36:13, 41:3–9, 42:1–43:10, 55:20–22, Ex. C to MIL, ECF No. 82-3) (stating "I think" and "I might" have heard a click, and that Plaintiff thought it was closed because "you just couldn't lift it off"). Further, Dr. Pratt's opinion for these two scenarios shows that the user could be misled into thinking the Cooker was fully closed based on defects, and that his inspection of Plaintiff's Cooker "did not emit a 'click' sound, or any other audible indication that the lid was fully secured to the base." (Expert Report of John Pratt, Ph.D. at 10–12, 16, Ex. 1 to Resp.). This means that Scenarios 1 and 4 fit the facts of this case, do not conclusively contradict Plaintiff's testimony, and should not be excluded under FRE 702 or 403. *See Humetrix, Inc. v. Gemplus, S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (explaining that a party who seeks to challenge the correctness of an expert's testimony should do so in cross-examination and with its own experts).

Scenario 2 also fits the facts of this case and will not be excluded under FRE 702 or 403. This scenario involves the pot lid liner being "mistakenly assembled into the lid upside down,"

which could lead to "marginally overlapped locking lugs" resulting in an explosive separation. (Expert Report of John Pratt, Ph.D. at 11, Ex. 1 to Resp.). Dr. Pratt's analysis and inspection of Plaintiff's Cooker reveals that "this defect exists on [Plaintiff's] PPC770" Cooker, and thus his opinion would help the jury for purposes of FRE 702. (*Id.* at 8).

Defendant is correct, however, that Plaintiff has not provided evidence to show how Scenario 3 could have caused Plaintiff's injuries from the alleged explosion. (*See* Expert Report of John Pratt, Ph.D. at 11–12, Ex. 1 to Resp., ECF No. 85-1) (speculating that Plaintiff "may have attached the lid for the second cook cycle by initially rotating it to the intended fully locked position then backing off the lid after extension of the floating valve"). Dr. Pratt stated there was not any support for, or against, this Scenario occurring based on Plaintiff's testimony. (Dep. John Pratt, Ph.D. 125:23–129:8, ECF No. 85-4). Nor has Plaintiff provided evidence to show that Dr. Pratt's reading of Plaintiff's testimony is incorrect.

Nevertheless, Dr. Pratt's opinion about Scenario 3 could help the jury with understanding the defective nature and potential dangers of Plaintiff's Cooker in support of her claims. *See Rivera v. Philip Morris, Inc.*, 209 P.3d 271, 275 (2009) (discussing the elements of products-liability claims such as negligence and failure to warn, and how proving causation for purposes of failure-to-warn cases can be done by showing that "a different warning would have altered the way the plaintiff used the product or would have 'prompted plaintiff to take precautions to avoid the injury'"). Likewise, Plaintiff's deposition testimony does not foreclose the possibility of Scenario 3 occurring, which means testimony could develop during trial to reveal Scenario 3 as fitting the facts of this case. The Court thus reserves its ruling on whether to limit Dr. Pratt's expert opinion as to Scenario 3. *See Luce*, 469 U.S. at 41.

### 2. *Reliable Methodology and Sufficient Data*

"To determine reliability, the Supreme Court has suggested several factors: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and

publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) (citations and quotations omitted). Those several factors are illustrative, not exhaustive. *Id.*

In cases where the proffered expert testimony is not based on independent research distinct from the litigation, "the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317–18 (9th Cir. 1995). Moreover, "[a]n expert who relies solely or primarily on his experience 'must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013).

Here, Dr. Pratt formed his expert opinions based on his engineering experience and expertise, which focused on researching, developing, and testing latching mechanisms, assembly clamps, locks, and pressure sensing devices—largely for the aviation and aerospace industry. (Expert Report of John Pratt, Ph.D. at 3–4, Ex. 1 to Resp., ECF No. 85-1). From that experience, Dr. Pratt conducted inspections and testing of Plaintiff's Cooker. (Dep. John Pratt, Ph.D. 46:4–54:13, Ex. 2 to MIL, ECF No. 82-2). His October 17, 2018 expert report, for example, details the "series of tests" specific to Plaintiff's "accident cooker" to determine "whether it was possible to attach the lid with marginal locking lug overlap such that the unit would still pressurize." (Expert Report John Pratt, Ph.D. at 13, Ex. 1 to Resp.). Similarly, he relied on Plaintiff's deposition testimony about how her injuries allegedly occurred. (*Id.* at 9).

Dr. Pratt also bases his opinion on the "dozens" of other pressure cookers like Plaintiff's that he has evaluated and tested in the past and in similar litigation. (Dep. John Pratt, Ph.D. 47:13–16, ECF No. 85-4); (Rebuttal Expert Report of John Pratt, Ph.D. at 5–8, Ph.D., Ex. 2 to

Resp., ECF No. 85-2). Dr. Pratt then lists his methodology for these tests and explains why they repeatedly revealed pressure cooker lids such as Plaintiff's to be removable while still pressurized. (Dep. John Pratt, Ph.D. 138:11–139:2, 143:7–9, Ex. 2 to MIL, ECF No. 82-2); (Expert Report of John Pratt, Ph.D. at 10, 12–13, Ex. 1 to Resp., ECF No. 85-1). Dr. Pratt further explains how his opinions are supported by inspections conducted by Tristar's own engineering experts—inspections which apparently revealed design flaws with the same and similar models as Plaintiff's Cooker. (Expert Report of John Pratt, Ph.D. at 12, Ex. 1 to Resp.).

Based on Dr. Pratt's expertise, experience with latching systems and designs, testing performed both with Plaintiff's Cooker and others, and analysis of other reports about design defects with pressure cookers, the Court finds that Dr. Pratt's expert opinions about defects with Plaintiff's Cooker are based on reliable methodology and sufficient data. *See Williams v. Tristar Products, Inc.*, No. 7:17-CV-66 (HL), 2019 WL 4040587, at *4 (M.D. Ga. Aug. 27, 2019) (finding Dr. Pratt's proposed testimony and methodology to be sufficiently reliable based on his engineering background, his extensive experience in design and development of latching and locking devices, his "testing of an exemplar pressure cooker in detail," and "[h]is familiarity with pressure cookers manufactured by [Tristar Products, Inc.] gained by testifying as an expert in similar litigation."). His expert opinions thus will not be excluded based on the arguments raised in Defendant's Motion in Limine, (ECF No. 82).

### 3. *Dr. Pratt's Warnings Opinions*

Defendant seeks to exclude opinions by Dr. Pratt about the appropriateness of warnings or human factors associated with the owner's manual for Plaintiff's Cooker. Plaintiff "concedes that Dr. Pratt is not a human resources or warnings expert." (Resp. 8:15–22). However, Plaintiff requests that the Court reserve judgment about the extent to which Dr. Pratt can testify because he may be able to testify about what he learned in the scope of his work on this case and how the owner's manual's content relates to that work. (*Id.* 9:3–7).

The Court agrees with Plaintiff, and will reserve its judgment at this time over the extent to which Dr. Pratt can opine about the Cooker's owner's manual. Reservation of judgment is appropriate here because, while Dr. Pratt concedes he is not an expert in human factors, he bases parts of his opinion about the owner's manual on his engineering expertise in conjunction with objective facts discovered through his testing. (Expert Report of John Pratt, Ph.D. at 13–14, Ex. 1 to Resp.). Defendant has not presently shown that his testimony about such objective facts will be clearly inadmissible on all potential grounds.

**B. Motion for Summary Judgment**

Defendant moves for summary judgment in its favor as to all of Plaintiff's claims. (MSJ 7:6–16, ECF No. 78). The Court's below discussion addresses each of Plaintiff's claims in the order they appear in the Second Amended Complaint, (ECF No. 62).

**1. *Negligence***

Plaintiff's first claim for negligence proceeds under two theories: failure to warn; and defective design. (Sec. Am. Compl. ¶¶ 21–31). To prevail on her negligence claim, she must demonstrate "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1158 (Nev.2011) (en banc). Specific to the element of causation, "it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Yamaha Motor Co., U.S.A. v. Arnoult*, 955 P.2d 661, 664 (Nev. 1998)

**a) *Failure to Warn***

Defendant had a duty to include warnings with its pressure cookers that adequately communicated any dangers that may flow from the use or foreseeable misuse of the product. *Yamaha Motor Co.*, 955 P.2d at 665. Here, Defendant's warnings cautioned against forcing open a previously locked pressure cooker, (User Manual at 1–3, Ex. 1 to MSJ, ECF No. 78-1),

but it does not address the possibility of a cooker pressurizing without being fully closed or how pressure could exist in the Cooker even when it is easy to open. (*See id.*) (warning users not to open a pressure cooker until all pressure has been released, and that "if the unit is difficult to open, this indicates that the cooker is still pressurized"). Plaintiff's evidence shows that these warnings may have been inadequate because Defendant's pressure cookers could be opened while pressurized and with ease. (Dep. 30(b)(6) Representative Alejandro Lozano 156:3–160:25, Ex. 4 to Resp., ECF No. 86-4); (*see also* Expert Report of John Pratt, Ph.D. at 9–13, Ex. C to MSJ, ECF No. 78-3). Deposition testimony further provides support that Defendant may have been aware of these possible dangers but did not communicate it to users. (Dep. 30(b)(6) Representative Alejandro Lozano 156:3–160:25, Ex. 4 to Resp., ECF No. 86-4). While the accuracy of this evidence is disputed by Defendant, it nevertheless creates a genuine dispute of material fact about Defendant's awareness of possible dangers and a failure to communicate those dangers.

Defendant seeks to defeat Plaintiff's claim, however, by contending that there is no evidence of inadequate warnings *causing* Plaintiff's injuries. (MSJ 12:20–14:2); (Reply 5:22–6:26, ECF No. 93). Namely, Defendant argues that Plaintiff cannot identify an inadequate warning with the pressure cooker that she both did not understand and would have heeded had it been properly stated to avoid her injuries. (*Id.*).

Contrary to Defendant's argument, Plaintiff's evidence provides sufficient support to overcome Defendant's Motion for Summary Judgment on the element of causation. Specifically, Plaintiff testified that she read the Cooker's Owner's Manual, (Dep. Tawndra Heath 62:2–64:7, Ex. C to MIL), and she would not have used the Cooker had she known it could pressurize while not fully closed and potentially burst open to cause burn injuries. (Decl. Tawndra Heath, Ex. 8 to Resp., ECF No. 86-8).[4] The credibility and weight of that evidence is

---

[4] Defendant argues that, based on *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.

disputed, but it precludes the Court from entering summary judgment as to Plaintiff's failure-to-warn theory of negligence.

### b) *Design Defect*

Defendant seeks summary judgment in its favor with Plaintiff's design-defect theory of negligence because Dr. Pratt's opinions "speak almost entirely of possibilities" about how a defect in the Cooker could have caused her injuries. (MSJ 9:5–17). Specifically, Defendant contends that Plaintiff stated with certainty how she fully closed the Cooker before the second cooking cycle; and thus, her injuries could not have been caused by an insecure lid as explained in Dr. Pratt's expert opinion. (*Id.* 9:18–12:17).

In contrast to Defendant's interpretation of Plaintiff's testimony, she does not unequivocally establish that she fully closed her Cooker's lid. Dr. Pratt's expert report, moreover, lends factual support that Plaintiff may have mistakenly believed she secured the lid prior to the second cooking cycle, and that a defect in the Cooker could allow it to pressurize while not being fully closed. (Expert Report of John Pratt, Ph.D. at 9–13, 16, Ex. C to MSJ, ECF No. 78-3). That expert report further details how Dr. Pratt took part in a January 2017 inspection for the PPC770 pressure cookers alongside engineers of Tristar. (*Id.* at 12). That inspection revealed "design flaws" in several pressure cooker models like Plaintiff's based on a "floating valve/safety lock mechanism." (*Id.*). Dr. Pratt's expert report also details how apparent defects in that mechanism failed to prevent the consumer from removing the lid while the unit "contains a dangerously high level of pressure." (*Id.*). In fact, deposition testimony

---

2002), Plaintiff's Affidavit in support of causation is an impermissibly "self-serving affidavit" and cannot create a genuine dispute of material fact about her claim. (Reply 6:21–26, ECF No. 93). However, Plaintiff's Affidavit is based on her personal knowledge and understanding of events. The Affidavit's declarations also align with parts of Plaintiff's prior testimony; and the Affidavit's content would likely be admissible in trial through Plaintiff's own testimony. Her Affidavit differs from those found to be inadmissibly self-serving for purposes of a summary judgment motion when, for example, an affidavit "provides no indication how [the declarant] knows this to be true," is "uncorroborated" by other evidence, and with conclusions that would not be admissible in evidence. *Villiarimo*, 281 F.3d at 1059 n.5; *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007). Plaintiff's Affidavit thus can serve as support to help create a genuine dispute of material fact. *See S.E.C.*, 500 F.3d at 909.

from Defendant's representative, Alejandro Lozano, explains that a defect exists with a pressure cooker's lid if it could come off while pressurized, since that "shouldn't be able to happen because of the float valve." (Dep. 30(b)(6) Representative Alejandro Lozano 104:1–105:18, Ex. 2 to Resp., ECF No. 86-2).

Specific to the element of causation, Dr. Pratt's expert opinion—especially that regarding the four Scenarios detailed in his October 17, 2018 report—provide evidence to show how the apparent design defects could have caused Plaintiff's injuries. Except for Scenario 3, as discussed previously in this Order, those Scenarios are based on evidence in this case rather than mere speculation or guesswork.

This evidence, altogether, lends evidentiary support for Plaintiff's claim that Defendant "failed to . . . eliminate foreseeable dangers which subject[ed] a user to an unreasonable risk of harm." *Smith v. Wolf Performance Ammunition*, No. 2:13-cv-2223 JCM NJK, 2015 WL 2359063, at *3 (D. Nev. May 18, 2015); *Cf. Kitchens v. Lawrence Roll-Up Doors, Inc.*, No. 2:04-cv-1119-RLH-LRL, 2006 WL 1285415, at *3 (D. Nev. May 8, 2006). In other words, such evidence creates a genuine dispute of material fact with each element of her negligence claim, which precludes entry of summary judgment in Defendant's favor.

### 2. *Breach of Implied Warranty*

Defendant argues for summary judgment with Plaintiff's second claim—breach of the implied warranty of merchantability—on two grounds: (1) there was no design flaw that caused Plaintiff's injuries; and (2) Plaintiff did not provide Defendant with proper notice of the breach before initiating litigation, as required by Nevada Revised Statute ("NRS") § 104.2607(3)(a).

Addressing causation first, Plaintiff must provide evidence that Defendant's breach of the implied warranty "was the proximate cause of the loss sustained." *Nevada Contract Servs., Inc. v. Squirrel Companies, Inc.*, 68 P.3d 896, 899 (Nev. 2003). Here, Dr. Pratt's inspections of Plaintiff's Cooker revealed several defects which could have caused Plaintiff's injuries as

explained in her deposition testimony and other evidence previously discussed in this Order. (*See* Expert Report of John Pratt, Ph.D. at 3–4, Ex. 1 to Resp.). This evidence creates a genuine dispute of material fact as to causation for a jury to decide. *Id.* at 900; *Yamaha Motor Co., U.S.A., v. Arnoult*, 955 P.2d 661, 664 (Nev.1998) ("Proximate causation is generally an issue of fact for the jury to resolve.").

Defendant also is not entitled to summary judgment based on the notice requirement in NRS § 104.2607(3)(a). That statute states, "[t]he buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Nev. Rev. Stat. 104.2607(3)(a). In this matter, Plaintiff provided Defendant with a letter roughly three months after the subject incident, and six months before filing her Complaint. (Letter from Pl.'s counsel to Tristar, Ex. 6 to Resp., ECF No. 86-6). The letter discussed her injuries, the Cooker at issue, the date she sustained her injuries, and that an explosion had occurred from the Cooker. (*Id.*). This pre-litigation letter precludes a finding as a matter of law that notice was not given. *See* 6 American Law of Torts §§ 18:50, 23:23 (Aug. 2019); *compare Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (construing a similar statute from California, and finding that simultaneously sending a letter with the complaint was insufficient to support notice).[5]

### 3. *Strict Products Liability*

Like with her negligence claim, Plaintiff proceeds with two theories of strict products liability: failure to warn; and design defect. (Sec. Am. Compl. ¶¶ 37–47). Both theories require her to produce evidence showing: "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the

---

[5] Defendant does not appear to directly challenge Plaintiff's Complaint, amended or otherwise, as insufficiently alleging notice and warranting dismissal based on a pleading deficiency. To the extent that Defendant seeks to challenge the sufficiency of Plaintiff's pleadings, Defendant may clarify its intent through a separate motion seeking that relief—though the Court does not opine on the merits of such a motion or the method to do so.

defect caused the plaintiff's injury." *Rivera v. Philip Morris, Inc.*, 209 P.3d 271, 275 (Nev. 2009) (quotations omitted).

        a)  *Failure to Warn*

Conditions that establish strict liability under a failure-to-warn theory include:

> Where the defendant has reason to anticipate that danger may result from a particular use of his product, and he fails to warn adequately of such a danger . . . . [and] where the product is faultlessly made, if it was unreasonably dangerous to place the product in the hands of the consumer without adequate warnings concerning its safe and proper use.

*Oak Grove Investors v. Bell & Gossett Co.*, 668 P.2d 1075, 1080 (Nev. 1983). Moreover, a warning must be: "(1) designed to reasonably catch the consumer's attention, (2) that the language be comprehensible and give a fair indication of the specific risks attendant to use of the product, and (3) that warnings be of sufficient intensity justified by the magnitude of the risk." *Lewis v. Sea Ray Boats, Inc.*, 65 P.3d 245, 250 (Nev. 2003). "[T]he burden of proving causation can be satisfied in failure-to-warn cases by demonstrating that a different warning would have altered the way the plaintiff used the product or would have prompted plaintiff to take precautions to avoid the injury." *Rivera*, 209 P.3d at 275.

Here, the same evidence provided by Plaintiff which created a genuine dispute of material fact with her negligence-based claim similarly creates a dispute of material fact with strict liability. That is, Plaintiff's evidence lends support about how Defendant had reason to anticipate a danger with its pressure cookers based on the lid becoming pressurized though not securely closed, and how this danger could result in serious harm without an adequate warning. (Dep. 30(b)(6) Representative Alejandro Lozano 150:2–152:25, Ex. 4 to Resp., ECF No. 86-4). With this reason to anticipate danger and resulting harm, the evidence then shows that Defendant did not revise its warnings with Plaintiff's Cooker. (*Id.* 191:20–201:24). Last, Plaintiff provides support that she would have avoided this danger had she been warned, or at

least if given greater warnings than those in the Owner's Manual. (Decl. Tawndra Heath, Ex. 8 to Resp., ECF No. 86-8). Indeed, Plaintiff provides the opinion of her warnings and human factors expert, Joellen Gill, to explain the Cooker's warnings and how they were inadequate. (Dep. Joellen Gill 86:1–93:25, Ex. 7 to Resp., ECF No. 86-7).

Plaintiff's evidence, when taken together, creates a genuine dispute of material fact with each element of her claim for strict products liability under a failure-to-warn theory. *See Rich v. Taser Int'l, Inc.*, No. 2:09-cv-02450-ECR, 2012 WL 1080281, at *9 (D. Nev. Mar. 30, 2012).

b) *Design Defect*

With Plaintiff's design defect theory, she must provide evidence to establish causation by showing a nexus "between the design defect of the product and the injury—that is, the plaintiff must show that the design defect in the product was a substantial factor in causing [her] injury." *Price v. Blaine Kern Artista, Inc.*, 893 P.2d 367, 370 (Nev. 1995) (quotations omitted). A product is defective when it is "dangerous because [it] fail[s] to perform in the manner reasonably to be expected in light of [its] nature and intended function." *Allison v. Merck & Co.*, 878 P.2d 948, 952 (Nev. 1994).

Just as with Plaintiff's negligence claim, Defendant argues for summary judgment as to strict liability because "there is no evidence that the triggering events identified in [Dr. Pratt's] report actually happened in this case . . . which does not suffice for showing proximate cause." (MSJ 9:15–17, ECF No. 78). The Court again notes that Plaintiff's deposition testimony does not unequivocally state that she fully locked the Cooker or heard a click before the second cooking cycle. Further, Dr. Pratt's inspection found that her Cooker does not emit any "click" when closed, and that defects exist because the Cooker could pressurize without the lid being completely closed and secure. (Dep. John Pratt, Ph.D., 114:3–117:23, ECF No. 86-1); (Expert Report of John Pratt, Ph.D. at 9–13, Ex. C to MSJ, ECF No. 78-3). Moreover, Plaintiff provides an expert medical opinion from Benjamin Rodriguez, M.D. to show that her burns

were the result of "superheated liquid" splashed onto her. (Report of Benjamin Rodriguez, M.D., Ex. 3 to Resp., ECF No. 86-3).

Therefore, when construing Plaintiff's evidence and its related inferences in her favor at this summary judgment stage, *see Anderson*, 477 U.S. at 249, there is a dispute of material fact about whether the Cooker had an unreasonably dangerous defect that allowed Plaintiff to open the lid while under pressure, causing her injuries as detailed in Dr. Pratt's reports. (Expert Report of John Pratt, Ph.D. at 9–13, Ex. C to MSJ); *cf. Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1153 (9th Cir. 2005). While a factfinder may ultimately reject Plaintiff's evidence, it precludes the Court from granting summary judgment in Defendant's favor as to Plaintiff's strict liability claim based on a design defect.

### 4. *Violation of Nevada Consumer Protection Laws*

Plaintiff's fourth cause of action arises under Nevada's Deceptive Trade Practices Act ("NDTPA"), NRS § 598.0915(5), (7), and (15). To support a claim under the NDTPA, Plaintiff must prove that she reasonably relied on misrepresentations or false statements made by Defendant, which caused her damages. *See Gaming v. Trustwave Holdings, Inc.*, No. 2:15-cv-02464-GMN-PAL, 2016 WL 5799300, at *7 (D. Nev. Sept. 30, 2016) (citing *Picus v. Wal–Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009)); Nev. Rev. Stat. 598.0915(5) (prohibiting "a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods"); Nev. Rev. Stat. 598.0915(7) (prohibiting representations "that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model" when they are not); Nev. Rev. Stat. 598.0915(15) (prohibiting "knowingly mak[ing] any other false representation in a transaction").

Here, Defendant argues that Plaintiff cannot establish a genuine dispute of material fact with its NDTPA claim because its expert, Dr. Rob Giachetti, "determined that Plaintiff's injuries are not the result of an explosive event." (MSJ 15:1–5). Defendant also argues that

Plaintiff did not view any misrepresentations by Defendant because she did not see advertising related to the Cooker and she understood everything in the Owner's Manual. (*Id.* 15:9–10).

With regard to Dr. Giachetti, his opinion stands in direct contrast to that of Dr. Pratt about how Plaintiff's Cooker could have caused her injuries—thereby creating a dispute of fact appropriate for a jury's resolution, not the Court on summary judgment. It is similarly an issue of fact based on the evidence here as to whether the warnings and statements in the Cooker's Owner's Manual were false or misleading; and whether those false or misleading statements caused Plaintiff's injuries. Defendant's Motion is thus denied as to Plaintiff's NDTPA claim.

### 5. *Punitive Damages*

Plaintiff's fifth claim is for punitive damages, which is a form of relief rather than a separate cause of action. Proving that a defendant engaged in a "conscious disregard" of the rights or safety of others is one method to earn punitive damages. Nev. Rev. Stat. 42.001(1). A defendant has a "conscious disregard" of a person's rights and safety when he or she knows of "the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." *Id.* § 42.001(1); *Wyeth v. Rowatt*, 244 P.3d 765, 783 (Nev. 2010). Moreover, gross negligence or recklessness is not enough. *Wyeth*, 244 P.3d 783.

Defendant moves for summary judgment with this remedy on the basis that Plaintiff can neither proceed with any of her claims nor show that Defendant engaged in "oppression, fraud or malice" that would warrant punitive damages. (MSJ 15:17–16:11); (Reply 8:10–20, ECF No. 93). Plaintiff's evidence, however, provides facts that could support such damages. As discussed in this Order, evidence provided by Plaintiff could reasonably lead a jury to find that Defendant knew of dangers with its pressure cookers becoming pressurized with unsecure lids during cooking cycles, in contradiction to its Owner's Manual. Evidence here also shows that Defendant's knowledge of these dangers could have existed as early as 2013, (Dep. 30(b)(6) Representative Alejandro Lozano 51:21–55:25, 63:3–15, 98:21:5–101:21, 142:13–20, 150:2–

152:23, Ex. 4 to Resp., ECF No. 86-4); and, thereafter, Defendant might have continued its sales without adequate warnings about those known, possible dangers.

Plaintiff, consequently, has demonstrated a genuine dispute of material fact about whether Defendant knew that Plaintiff's Cooker, and others like it, were unsafe, yet continued to market them anyway. That dispute of material fact precludes the Court from granting summary judgment in Defendant's favor as to punitive damages. *See Phillips v. C.R. Bard, Inc.*, No. 3:12-cv-00344-RCJ, 2014 WL 7177256, at \*11 (D. Nev. Dec. 16, 2014) (allowing a request for punitive damages to survive summary judgment when the plaintiff "proffered evidence that a reasonable jury could believe shows that Defendants knew that their [product] was unsafe but continued to market and distribute it, anyway").

## IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine, (ECF No. 82), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 78), is **DENIED**.

**DATED** this ___27___ day of September, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court