**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TAWNDRA L. HEATH, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:17-cv-2869-GMN-BNW |
| vs. | ) |
| | ) **ORDER** |
| TRISTAR PRODUCTS, INC., a Pennsylvania Corporation; ZHONGSHAN JINGUANG HOUSEHOLD APPLIANCE MANUFACTURE CO., LTD., a foreign corporation; | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court is Defendant Tristar Products, Inc. ("Tristar") and Zhongshan Jinguang Household Appliance Manufacture Co., Ltd., (collectively, "Defendants'") Motions in Limine, (ECF Nos. 122–126, 133–134).  Plaintiff Tawndra Heath ("Plaintiff") filed Responses, (ECF Nos. 128–132, 142–143).

Also pending before the Court is Defendant Tristar's Motion for Leave to File Replies in Support of Defendants' Motions in Limine, (ECF No. 139).  Plaintiff did not file a Response.

For the reasons stated below, Defendants' Motion for Leave to File Replies is **GRANTED** and Defendants' Motions in Limine are **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

This case arises from injuries that Plaintiff suffered when the lid of her Power Pressure Cooker, Model No. PPC770 (the "Cooker")[1] allegedly exploded open after she used it to

---

[1] The Cooker has three main components: a base, a removable inner pot, and a lid. (MSJ 4:12–20, ECF No. 78). "The lid has an internal circumferential gasket, two valves, and set of metal locking tabs." (*Id.*).

prepare corned beef brisket. (Sec. Am. Compl. ¶¶ 4–20, ECF No. 62); (Dep. Tawndra Heath 31:16–33:20, Ex. C to Mot. in Limine ("MIL"), ECF No. 82-3).  Defendant Tristar was the seller and distributor of that Cooker. (Sec. Am. Compl. ¶ 9).  Defendant Zhongshan Jinguang Household Appliance Manufacture Co., Ltd. ("Defendant Zhongshan") manufactured the Cooker. (*Id*. ¶ 10).

Plaintiff states that she prepared the corned beef brisket in the Cooker through two cooking cycles at her home.  In the first cycle, she set the Cooker for a sixty-minute cook cycle, then "left for . . . Bible study." (Dep. Tawndra Heath 34:3–36:24, Ex. C to MIL).  When she returned, she saw that the corned beef was not finished.  She accordingly set it for a second cooking cycle—following the same steps of using the Cooker as the first cycle. (*Id.* 39:5–42:16).  Plaintiff states that when she closed the Cooker's lid with each cycle, it did not take any force at all. (*Id.* 35:23–25).

After the first cycle, Plaintiff opened the lid easily and without issue. (*Id.* 41:3–12).  For the second cycle, Plaintiff states that she approached the Cooker roughly fifteen to twenty minutes after it emitted a "beeping noise" to indicate the cook cycle was complete. (*Id.* 44:1–45:5).  However, when she attempted to open the Cooker's lid, she claims that water exploded out onto her face, neck, chest, and arm. (*Id.* 53:23–56:19).  Plaintiff then went to the hospital, and received treatment for first, second, and third-degree burns. (Report of Benjamin Rodriguez, M.D., Ex. 3 to Resp., ECF No. 86-3).

Plaintiff alleges that Defendants had notice that the Cooker was likely defective with respect to the "lid safety interlock system." (Sec. Am. Compl. ¶ 12).  Plaintiff claims that, despite this notice, Defendants continued to sell the Cooker while representing that the Model was a safe product. (*Id*. ¶ 14).

On October 12, 2017, Plaintiff initiated this lawsuit against Defendants in the Eighth Judicial District Court for Clark County, Nevada. (Compl. at 1, Ex. 1 to Pet. Removal, ECF No.

1-1).  Defendants removed the case to this Court on November 15, 2017. (Pet. Removal, ECF No. 1).  Plaintiff asserts four claims for relief against Defendants: (1) negligence; (2) breach of warranty; (3) strict products liability; and (4) violation of Nevada consumer protection laws. (Sec. Am. Compl. ¶¶ 21–58).  She also seeks punitive damages against Defendant. (*Id.* ¶¶ 59–64).  The Court starts with addressing Defendants' Motion for Leave to File Replies.

## II.  LEGAL STANDARD

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FRE 103(c)).  In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41.

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential

1  prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.
2  Supp. 1398, 1400 (N.D. Ill. 1993).

3  **III.   DISCUSSION**

4      **A.  Defendants' Motion for Leave to File Replies, (ECF No. 139)**

5      "The failure of an opposing party to file points and authorities in response to any
6  motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a
7  consent to the granting of the motion." D. Nev. LR 7-2(d).  As Plaintiff has not opposed the
8  Motion, the Court **GRANTS** the Motion for Leave to file Replies in Support of Defendants'
9  Motions in Limine.

10      **B.  Defendants' MIL No. 1 to Preclude Customer Call Recordings, (ECF No. 122)**

11      Defendants seek to exclude customer call recordings, in which customers complained to
12  Tristar about Tristar products between 2014 and the date of Plaintiff's underlying incident.[2]
13  (*See* MIL No. 1, ECF No. 122).  Specifically, they argue that the recordings should be
14  precluded because: (1) the recordings are hearsay and possibly double hearsay; (2) no hearsay
15  exception applies; (3) the recordings cannot be authenticated; and (4) the recordings are
16  irrelevant. (*Id*. 3:11–12).   Plaintiff, in response, claims that the recordings are admissible as
17  business records under FRE 803(6) and otherwise, are relevant to the negligence claim at issue.
18  (Pl.'s Resp. to MIL No. 1, 2:2–8:13, ECF No. 128).

19      Rule 803(6) provides that business records are admissible when two foundational facts
20  are shown: "(1) the writing is made or transmitted by a person with knowledge at or near the
21  time of the incident recorded, and (2) the record is kept in the course of regularly conducted
22  business activity." *Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 819 (9th Cir. 2002)

---

[2] On February 25, 2019, this Court ordered Defendants to produce audio recording and live chats made to Defendants between 2014 and the date of the accident. (*See* Mins. Proceeding, ECF No. 75).  Pursuant to the Order, Defendants produced 123 audio recordings involving customer complaints for pressure cookers. (MIL No. 1 3:22–24).

(quoting *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985)); *see also* Fed. R. Evid. 803(6). The business records exception, however, only applies "if the person furnishing the information to be recorded is 'acting routinely, under a duty of accuracy, with employer reliance on the result, or in short, in the regular course of business.'" *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) (citing *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir.1981), cert. denied, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982)). Put differently, if the supplier of the information does not act in the regular course, an essential link is broken—the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. *See* Advisory Committee Notes, Fed. R. Evid. 803.

The 123 audio recordings are not business records. The recordings here are customer call recordings concerning complaints regarding Tristar pressure cookers. (*See* MIL No. 1, 3:17–24). The customers who called regarding Tristar pressure cookers are not individuals "acting routinely, under a duty of accuracy . . . in the regular course of business." *Clark*, 650 F.2d at 1037. Indeed, Plaintiff does not dispute this fact but instead focuses on the trustworthiness of the recordings. (*See* Pl.'s Resp. to MIL No. 1, 4:2–8). Plaintiff also attempts to distinguish *Paznit* from the instant case, arguing that *Paznit* is not applicable because the case involved a criminal investigation. (*Id*. 2:20–21). This distinction is, however, without a difference. As explained in the Advisory Committee Notes, the assurance of accuracy under the business records exception does not extend to individuals who act outside the regular course of the business. *See* Advisory Committee Notes, Fed. R. Evid. 803. Because the customers do not act in the normal course of business at Tristar, these recordings cannot be admitted under the business records exception. Defendants demonstrate that the contents of the calls are inadmissible hearsay and Plaintiff fails to sufficiently rebut this assertion; therefore, the Court

**GRANTS** Defendants' First Motion in Limine and finds the 123 audio recordings are not currently admissible as business records under FRE 803(6).[3]

### C. Defendants' MIL No. 2 to Preclude Dr. Pratt's Video, (ECF No. 123)

Defendants seek to exclude a video demonstration conducted by Plaintiff's liability expert, Dr. John Pratt ("Dr. Pratt"). (MIL No. 2, 1:25–26, ECF No. 123). In the 103-second video, Dr. Pratt tested the alleged defect in Plaintiff's Cooker by filling it with hot tap water, placing it in the same mode Plaintiff used, and opening the Cooker approximately 49 seconds after the float valve extended. (Pratt's Rebuttal Expert Report at 7–8, Ex. B to MIL No. 2, ECF No. 123-2). Defendants argue that the video is irrelevant because the test is not substantially similar to the incident described by Plaintiff. (MIL No. 2, 4:22–6:15). Furthermore, Defendants seek to preclude Dr. Pratt from referencing or showing the video demonstration at trial given the lack of written protocol and scientific methodology used during Dr. Pratt's testing. (*Id*. 6:16–8:9). Plaintiff, in response, argues that Defendants failed to timely address the alleged deficiencies in a supplemental report and further, that any alleged inconsistency between the video and Plaintiff's testimony is explained by the traumatic event. (Pl.'s Resp. to MIL No. 2, 2:15–19, ECF No. 129).

i. Admissibility of the Video Demonstration

Defendant first argues that the video demonstration should be excluded because the video is not substantially similar to Plaintiff's incident and thus, irrelevant to the current case. (MIL No. 2, 4:22–6:15). Plaintiff argues that any alleged inconsistency is explained by the

---

[3] Plaintiff additionally argues *United States v. Childs* holds that records kept in the regular course of business and relied upon by that business are admissible under Rule 803(6). (Pl.'s Resp. to MIL No. 1, 3:9–19). There, the Ninth Circuit affirmed the district court's decision to admit exhibits as business records of an entity even when the entity was not the maker of the records. *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993). However, unlike the documents in *Childs*, Plaintiff fails to demonstrate that the customer call recordings are kept in the regular course of business at Tristar and that Tristar relied on the recordings in their business. Accordingly, because Plaintiff fails to show that the other requirements are met, the business record exception does not apply here even under *Childs*. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (a party must show that the requirements for admissibility are met by a preponderance of the evidence).

nature of the traumatic event Plaintiff experienced that may be explored through cross-examination. (Pl.'s Resp. to MIL No. 2, 2:15–19). Further, Plaintiff contends that Defendants failed to timely file a supplemental report addressing the deficiencies despite having nearly two full years to do so. (*Id.* 3:3–9).

Nevertheless, the Court finds the video irrelevant. "To lay a foundation for the admission of evidence of other accidents to prove a design defect, or notice of a defect, the party must demonstrate that there is a substantial similarity between the products in question." *Tompkins v. Medtronic, Inc.*, 17 F.3d 396 (9th Cir. 1994); *see also Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991). "Minor or immaterial dissimilarity does not prevent admissibility." *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002). Rather, "the rule rests on the concern that evidence of dissimilar accidents lacks the relevance required for admissibility under FRE 401 and 402." *Cooper*, 945 F.2d at 1105. The proponent of the evidence carries the burden in demonstrating a substantial similarity between other accidents to the accident which is the subject of the litigation. *Smith v. Beech Aircraft Corp.*, No. 97-17135, 1999 U.S. App. LEXIS 8351, at *4 (9th Cir. Apr. 29, 1999).

Plaintiff, who seeks to admit Dr. Pratt's video, fails to demonstrate a substantial similarity between the incident described by Plaintiff and Dr. Pratt's experiment. Defendant points out two significant differences, namely that: (1) Plaintiff did not force the lid to open whereas Dr. Pratt forced off the lid; and (2) Plaintiff waited at least 15 to 20 minutes before opening the Cooker whereas Dr. Pratt opened the Cooker while it was still pressurizing. (MIL No. 2, 5:6–15). In response, Plaintiff does not attempt to establish a similarity between the two incidents. Plaintiff instead claims that any alleged inconsistency between the video and Plaintiff's testimony is explained by the nature of the traumatic event that she experienced. (Pl.'s Resp. to MIL No. 2, 2:6–14). Though Plaintiff suffered a traumatic event, she still carries the burden in showing that Dr. Pratt's video is relevant and specifically, a similarity between

the two incidents. *Smith v. Beech Aircraft Corp.*, No. 97-17135, 1999 U.S. App. LEXIS 8351, at *4 (9th Cir. Apr. 29, 1999). Because Plaintiff fails to demonstrate similarity between Dr. Pratt's experiment and her incident, the Court **GRANTS** Defendants' request to preclude Dr. Pratt's 103-second video.

ii. <u>Admissibility of Dr. Pratt's Video Demonstration as Foundation for Dr. Pratt's Expert Opinion</u>

Defendant further argues that the video is inadmissible for the purpose of illustrating a scientific principle pursuant to FRE 702 and Daubert because the video and associated testimony are not reliable. (MIL No. 2, 6:16–8:9). The Court's "gatekeeping" obligation concerning admission of expert testimony derives from standards set by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 (1993). In broad terms, these standards require that the party intending to offer expert testimony show by a preponderance of the evidence that the expert possesses the qualifications and experience to render the expert opinion, that the opinion offered has adequate support for the conclusions and analysis, and that "the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 588–90; Fed. R. Evid. 702(a).

The methodology Dr. Pratt used during the video demonstration cannot be tested in this case. *See* Fed. R. Evid. 702(c) ("A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if the testimony is the *product of reliable principles and methods*.") (emphasis added). As Dr. Pratt admits in his deposition, he did not follow any written protocol for his test. (Depo. Dr. John Pratt ("Pratt Depo.") 138:15–25, 156:22–25, 157:1–6, Ex. C to MIL No. 2, ECF No. 123-3). Notably, Plaintiff does not rebut this assertion.

Instead, Plaintiff seemingly contends that Defendants' failure to timely file a supplemental report renders the video admissible. (Pl.'s Resp. to MIL No. 2, 1:21–2:5).

1 However, whether Defendants timely filed a supplemental report is irrelevant to whether the
2 recorded demonstration is reliable.  Because Dr. Pratt cannot confirm the reliability of his
3 testing method, the Court finds that Dr. Pratt cannot rely on the video demonstration in his
4 expert testimony.  The Court accordingly **GRANTS** Defendants' Second Motion in Limine and
5 finds Dr. Pratt's 103 second video inadmissible.

### D. Defendants' MIL No. 3 to Preclude the Expert Report Discovery Prior to November 16, 2018, (ECF No. 124)

Defendants seek to exclude any expert discovery Plaintiffs disclosed after the November 16, 2018 expert report discovery cut-off. (MIL No. 3, 3:9–13).  Specifically, Defendants argue that Plaintiff's failure to disclose Dr. Pratt's Rebuttal Expert Report and Dr. Pratt's Supplemental Expert Report renders the reports inadmissible pursuant to Federal Rule of Civil Procedure 37.[4]  Plaintiff asserts that Defendants are unable to demonstrate prejudice given that Defendants deposed Dr. Pratt after the disclosure of both the Rebuttal and Supplemental Report. (Pl.'s Resp. to MIL No. 3, 3:11–4:3, ECF No. 130).

"Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples the Office Superstore*, LLC, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly, Ltd*, 259 F.3d at 1106); Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)).  "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827; Fed. R. Civ. P. 37(c)(1).

---

[4] Defendants specifically note that Plaintiff untimely disclosed supplemental expert reports form Dr. John Pratt and Joellen Gill; however, only discuss the supplemental expert report from Dr. John Pratt. (*See* MIL No. 3, 3:12–12).  Accordingly, because Defendants do not discuss the supplemental report by Dr. Gill, the Court does not address Dr. Gill's supplemental report.

"Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Calvert v. Ellis*, No. 2:13-cv-00464-APG-NJK, 2014 U.S. Dist. LEXIS 110624, at *11-12 (D. Nev. Aug. 8, 2014) (citing *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010)). "[T]he burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless." *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008). The Court first addresses Dr. Pratt's Rebuttal Expert Report.

### i. Dr. Pratt's Rebuttal Expert Report

First, Defendants argue that Sections VI and VII in Plaintiff's rebuttal expert witness disclosure dated December 17, 2018 ("Dr. Pratt's Rebuttal Expert Report") do not rebut prior reports, but rather introduce new theories of liability against Defendants. (MIL No. 3, 6:20–24). Because these two sections are not proper rebuttals, Defendants assert that Dr. Pratt should be precluded from referencing these sections at trial pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii). (*Id*. 6:23–24). In response, Plaintiff disregards Defendants' argument, arguing instead that Section V—a completely different section—actually rebuts Defendants' expert testimony. (Pl.'s Resp. to MIL No. 3 4:10–5:13).

Under Local Rule 7-2(c), "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." *See* D. Nev. LR 7-2(d). Here, Plaintiff ignores Defendants' argument and focuses on a separate, unaddressed section in its rebuttal. Because Plaintiff fails to provide a response, the Court construes Plaintiff's lack of

response as a consent to Defendants' objection.  The Court thus finds that Sections VI and VII of Dr. Pratt's Rebuttal Expert Report are not truly rebuttal expert testimony.

The late-disclosed Rebuttal Expert Report, however, was harmless.  Expert testimony which is not truly rebuttal in nature shall not be allowed at trial, unless the failure to disclose information required by Rule 26(as) was "harmless" or "substantially justified." *Downs v. River City Grp.*, LLC, No. 3:11-cv-00885-LRH-WGC, 2014 U.S. Dist. LEXIS 26056, at *7-8 (D. Nev. Feb. 28, 2014).  As Plaintiff asserts, Defendants deposed Dr. Pratt on January 10, 2019 after Plaintiff filed her Rebuttal and Supplemental Reports. (*See* Pratt's Depo. at 2); (*see also* Pl.'s Resp. to MIL No. 6, 2:11, ECF No. 142).  Whatever surprise or prejudice suffered by Plaintiff is, thus, minimal. *See Calvert v. Ellis*, No. 2:13-cv-00464-APG-NJK, 2014 U.S. Dist. LEXIS 110624, at *13 (D. Nev. Aug. 8, 2014) (finding that exclusion of the expert is not an appropriate remedy given that Plaintiff suffered minimal prejudice and surprise and thus, has "ample opportunity to cure the prejudice").  Accordingly, though the rebuttal was untimely and not truly rebuttal expert testimony, the deposition addressed the prejudice.  The Court thus finds that excluding Sections VI and VII are not appropriate remedies for Plaintiff's untimely disclosure.

## ii. Dr. Pratt's Supplemental Report

Defendants also argue that Section VII of Dr. Pratt's Supplemental Report is not, in fact, a supplemental report under Rule 26(e) because Dr. Pratt relied upon evidence that was available at the time of his first expert report dated November 16, 2018. (MIL No. 3, 7:9–21).  Because the report is not a supplemental report, Defendants assert that Plaintiff untimely filed the report. (*Id*. 7:19–21).  Plaintiff, in response, argues that the entire Supplemental Report addresses new information, and that any delay is excusable for good cause given the time it took to produce deposition transcripts and distill the information into the Supplemental Report. (Pl.'s Resp. to MIL No. 3, 5:14–6:10).

Plaintiff again fails to directly rebut Defendants' argument; however, as above, the Court finds the late disclosure harmless because Defendants deposed Dr. Pratt after Plaintiff filed Dr. Pratt's Supplemental Report. In Section VII, Dr. Pratt states, "[u]pon further review of Tristar documents produced during Discovery[,] I have now identified over 40 complaints of injury or damages by the Tristar electric pressure cookers were reported to Tristar or the CPSC." (Dr. Pratt's Supplemental Report at 10, Ex. E to MIL No. 3, ECF No. 124-6). Though this section goes beyond filling in minor gaps in Dr. Pratt's initial expert report, Defendants cannot assert that they were prejudiced by the untimely disclosure because they were given a chance to depose Dr. Pratt after the Supplemental Report. (*See* Pratt's Depo. at 2); (*see also* Pl.'s Resp. to MIL No. 6, 2:11, ECF No. 142). Accordingly, the Court **DENIES** Defendants' Third Motion in Limine.

### E. Defendants' MIL No. 4 to Preclude Documents from CPSC's Investigation, (ECF No. 125)

Defendants seek to exclude evidence of the Consumer Product Safety Commission's ("CPSC's") investigation into Tristar pressure cookers. (MIL No. 4, 3:3–4, ECF No. 125). The evidence includes any documents related to the CPSC's investigation into Tristar brand pressure cookers, including the subject Cooker at issue (the "CPSC Documents").[5] (*Id*. 3:20–23). Specifically, Defendants argue that the evidence of CPSC's investigation should be precluded because: (1) the CPSC investigative documents contain multiple levels of hearsay for which no exception applies; (2) the evidence is not relevant; and (3) the evidence is not admissible as the basis for expert opinions under FRE 703. (*Id*. 3:10–16). Plaintiff argues that preclusion is premature because Defendants failed to present the evidence at issue, specifically

---

[5] The evidence does not include CPSC's letter issued on December 15, 2017, informing Tristar attorneys of the closed investigation. (*See* MIL No. 3, 3:25–26). Defendants move to admit the letter in the Fifth Motion in Limine. (*See id*.).

the documents from CPSC's investigation into Tristar pressure cookers. (Pl.'s Resp. to MIL No. 4, 3:12–17, ECF No. 131). Additionally, Plaintiff asserts that the evidence is relevant because the other incidents are "substantially similar" to the incident at issue. (*Id*. 3:18–7:9).

Though the Court agrees that some documents may be excluded as inadmissible hearsay, the Court cannot categorically preclude the CPSC Documents without a closer review of the specific document at issue. Some documents may include customer complaints, which are likely hearsay, while others could concern CPSC's independent investigation into the Cooker. Defendants fail to mention, in relying on *McKinnon v. Skil Corp.*, that the First Circuit reviewed the CPSC reports at issue prior to excluding the specific CPSC reports. *McKinnon v. Skil Corp.*, 638 F.2d 270, 278 (1st Cir. 1981) ("Most of the data contained in the reports is simply a paraphrasing of versions of accidents given by the victims themselves who surely cannot be regarded as disinterested observers."). Because the Court cannot individually analyze the documents at issue, the admissibility of CPSC Documents will be determined at trial, where Plaintiff will have an opportunity to lay the foundation for the documents and establish the applicability of exceptions to the hearsay rule. *See also Neether v. Coleman Co*., No. CV 03-193-M-DWM, 2005 U.S. Dist. LEXIS 47711, at *49 (D. Mont. Sep. 20, 2005) (denying the "motion in limine to exclude from evidence at trial *any documents* generated by the CPSC") (emphasis added). Accordingly, the Court **DENIES** Defendants' Fourth Motion in Limine, subject to renewal at trial. Should Plaintiff seek to admit a CPSC document at trial, Plaintiff must demonstrate relevance—specifically, similarity between the incidents in the document and the incident at issue.

**F. Defendants' MIL No. 5 to Admit Letter from CPSC to Joe Shull, Esq., dated December 15, 2017, (ECF No. 126)**

Defendants seek to admit a letter from the CPSC to Joe Shull, Esq. dated December 15, 2017 (the "Letter") under FRE 803(8), the public record exception to hearsay. (MIL No. 5, 3:9–

11). Plaintiff, in response, argues that the letter is not a public record and further, that admitting the letter violates FRE 403 because the letter is substantially more prejudicial than probative. (Pl.'s Resp. to MIL No. 5, 3:8–4:14, ECF No. 132).[6]

### i. Public Record Exception

Under Federal Rule of Evidence 803(8), a statement or record of a public office is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness. *See* Fed. R. Evid. 803(8). A record is considered a "public record" if: (1) "it sets out the office's activities, a matter observed while under a legal duty to report, or the factual findings from a legally authorized investigation;" and (2) the opponent does not show that the record is untrustworthy. *See id*.

In *C.O. v. Coleman Co.*, the Western District of Washington excluded Epidemiologic Investigation Reports ("EIRs") prepared by the CPSC. *Coleman*, No. C06-1779 TSZ, 2008 U.S. Dist. LEXIS 122316, at *8-9 n.6 (W.D. Wash. Mar. 24, 2008). There, the Court distinguished the EIRs from other admissible CPSC documents concerning laboratory tests performed by CPSC technicians. *Id*. The EIRS, the Court concluded, "merely reproduce, second- or third-hand knowledge of previous events." *Id*. The Court thus excluded the EIRs because the CPSC did not conduct an independent investigation, but instead relied upon the various law enforcement and coroner or medical examiner reports." *Id*.

Unlike the EIRs, the Letter is plainly a "record or statement of a public office" that constitutes factual findings from a legally authorized investigation" under Rule 803(8)(A)(iii). The Letter does not rely on second- or third-hand knowledge of previous testing from CPSC technicians or other experts. Brandon Ehlen, a Compliance Officer in the Defect Division of

---

[6] Although Defendants are correct that the letter has not been formally authenticated, it is clear that Plaintiff would be able to authenticate the letter in compliance with Fed. R. Evid. 901 at trial. The letter is dated December 15, 2017, from the CPSC to Defendants' counsel. (*See* Ltr. from CPSC, Ex. A to MIL No. 5, ECF No. 126-1).

the CPSC, issued the Letter to Defendants. (*See* CPSC Letter, Ex. A to MIL No. 5). The Letter contains a seal and letterhead from the U.S. Consumer Product Safety Commission. (*See id.*). In the Letter, CPSC explains its decision to halt the investigation and further explains CPSC's continuing role beyond the closed investigation. (*Id.*). The CPSC further states its obligation to investigate under 15 U.S.C. § 2064. The CPSC Letter plainly informs Defendants of the CPSC's decision to close its investigation. *Cf. Coleman*, No. C06-1779 TSZ, 2008 U.S. Dist. LEXIS 122316, at *8-9 n.6 (W.D. Wash. Mar. 24, 2008). Plaintiff argues that the document was not obtained "publicly" because the letter is a private letter between Defendants' counsel and the CPSC. (Pl.'s Resp. to MIL No. 5, 3:8–18). FRE 803(8), however, does not require the document to be publicly reported to constitute a "public record" under the hearsay exception. With proper foundation, the Letter will be admitted. The Court accordingly **GRANTS** Defendants' Fifth Motion in Limine and finds that the Letter is admissible.[7]

### G. Defendants' MIL No. 6 for the Court to Enter an Order for an Adverse Inference Jury Instruction, (ECF No. 141)[8]

Defendants seek a favorable presumption and/or adverse inference at trial to remedy Plaintiff's spoliation of evidence. (MIL No. 6 3:18–20). Specifically, Defendants argue that Dr. Pratt's experimental test on December 13, 2018 materially altered the locking mechanisms on the Cooker at issue. (*Id.* 3:6–20). In response, Plaintiff contends that the motion should be denied because: (1) Defendants' expert, Mr. Giachetti, failed to disclose his new opinions in a

---

[7] Plaintiff additionally argues that the CPSC letter is more prejudicial than probative because admitting the CPSC Letter is akin to suggesting that the CPSC blessed Tristar's allegedly defective device. (Pl.'s Resp. to MIL No. 5, 3:19–4:14).

[8] Defendants filed a corrected Sixth Motion in Limine, that includes a supplemental affidavit from Dr. Robert Giachetti, Defendant Tristar's expert witness. (*See* Corrected MIL No. 6, ECF No. 141). In the supplemental affidavit, Dr. Giachetti specifically changes Paragraph 6 of his original affidavit and updates his professional history. (*See* Giachetti Aff. ¶ 3, Ex. C to MIL No. 6, Ex. 141-1)

supplemental report; and (2) Defendant fails to identify a specific jury instruction. (Pl.'s Resp. to MIL No. 6, 2:10–3:14, ECF No. 142).

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (internal quotation marks omitted). "This power includes the power to sanction the responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party." *Id*. "When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected." *Id*. The party seeking the sanction has the burden of establishing spoliation. *Ryan v. Editions Ltd. W.*, 786 F.3d 754, 766 (9th Cir. 2015).

A court can decide the issue of spoliation—and relatedly, whether to issue an adverse jury instruction—in a motion in limine. *See Badger v. Wal-Mart Stores, Inc.*, No. 2:11-CV-1609-KJD-CWH, 2013 U.S. Dist. LEXIS 91216, at *24 (D. Nev. June 28, 2013); *Smith v. UPS*, No. 2:08-CV-01313-RCJ-RJJ, 2010 U.S. Dist. LEXIS 158743 (D. Nev. Feb. 16, 2010); *Bordegaray v. Cty. of Santa Barbara*, No. 2:14-cv-8610-CAS(JPRx), 2016 U.S. Dist. LEXIS 173754, 2016 WL 7260920, at *5-6 (C.D. Cal. Dec. 13, 2016). The issue of spoliation, however, is normally reserved for trial or otherwise decided on a fuller record, like during discovery, backed by declarations. *See Hathaway v. Idaho Pac. Corp.*, No. 4:15-cv-00086-DCN, 2019 U.S. Dist. LEXIS 183647, at *31 (D. Idaho Oct. 21, 2019) (reserving "ruling on spoliation until after all the evidence has been presented" because "the issue of spoliation is so fact driven . . . that the Court cannot take it away from the jury"); *see also Grouse River Outfitters Ltd. v. Oracle Corp.*, No. 16-cv-02954-LB, 2019 U.S. Dist. LEXIS 106402, at *19-20 (N.D. Cal. June 21, 2019) (denying the motion in limine regarding spoliation because

"determining whether spoliation has occurred and the scope of any sanction generally is decided on a fuller record").

Though the Court agrees that Dr. Pratt should not have conducted the experimental testing without notifying Defendants, the Court declines to issue an adverse jury instruction at this time. It is unclear why Dr. Pratt chose to conduct his test without notice to Defendants, with no protocols in place, and on the actual Cooker at issue, instead of an exemplar. Defendants, however, have failed to meet their burden in demonstrating spoliation of evidence. *See Ryan*, 786 F.3d at 766. There remains a genuine dispute of fact as to whether the Cooker was materially destroyed by Dr. Pratt's experimental testing. In Dr. Giachetti's declaration, he asserts that "[t]he testing depicted in Dr. Pratt's video and described in his deposition caused the pressure cooker to suffer permanent changes and deformation." (*See* Giachetti Aff. ¶ 4). In response, Plaintiff provides an email by Dr. Pratt in which Dr. Pratt claims that his experimental testing did not destroy the Cooker. (*See* Email by Dr. Pratt ("Dr. Pratt Email"), Ex. 1 to Pl.'s Resp. to MIL No. 6, ECF No. 142-1). Dr. Pratt asserts that any alleged deformation of the metal occurred when Plaintiff opened the Cooker during the underlying incident, not during his experimental testing, because the metal strike plate cannot be flexed any further than the initial flex. (*Id.*). Determining whether Dr. Pratt materially destroyed the Cooker at issue will require a fuller record with more than one expert's declaration. *See, e.g.*, *Grouse River Outfitters Ltd. v. Oracle Corp.*, No. 16-cv-02954-LB, 2019 U.S. Dist. LEXIS 106402, at *19-20 (N.D. Cal. June 21, 2019). Furthermore, motions in limine are not the proper vehicle to resolve fact intensive inquiries. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Accordingly, the Court **DENIES** Defendants' Sixth Motion in Limine.

//

//

## H. Defendants' MIL No. 7 to Preclude Evidence of Other Lawsuits and Incidents Involving Tristar Pressure Cookers, (ECF No. 134)

Defendants lastly seek to exclude evidence of other consumer complaints and lawsuits regarding Tristar pressure cookers. (*See* MIL No. 7, 3:3–5, ECF No. 135). Specifically, Defendants argue that the evidence is inadmissible because: (1) it is irrelevant; (2) the evidence will be unduly prejudicial and confuse the jury with respect to the issues in this case; and (3) the evidence constitutes inadmissible hearsay. (*Id*. 3:9–14). Plaintiff, in response, asserts that Defendants' Motion in Limine is "[d]uplicative, redundant, and unnecessary" because Defendants reassert the same issues raised in first Motion in Limine. (Pl.'s Resp. to MIL No. 7, 2:3–13, ECF No. 143).

"Motions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx), 2010 U.S. Dist. LEXIS 141013, at *3 (C.D. Cal. May 19, 2010). The Court finds that whether the proffered evidence is relevant will be best determined at trial when the objection can be evaluated in a specific context. The Court, at this time, cannot categorically preclude evidence of other lawsuits and incidents without a closer review of the specific facts at issue. Accordingly, the Court **DENIES** Defendants' Seventh Motion in Limine, subject to renewal at trial.

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Leave to File Replies, (ECF No. 139), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine, No. 1, (ECF No. 122), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine, No. 2, (ECF No. 123), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine, No. 3, (ECF No. 124), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine, No. 4, (ECF No. 125), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine, No. 5, (ECF No. 126), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine, No. 6, (ECF No. 133), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine, No. 7, (ECF No. 134), is **DENIED**.

**DATED** this __21__ day of July, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court