# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

TAWNDRA L. HEATH,

          Plaintiff,

  vs.

TRISTAR PRODUCTS, INC., a Pennsylvania Corporation; ZHONGSHAN JINGUANG HOUSEHOLD APPLIANCE MANUFACTURE CO., LTD., a foreign corporation;

          Defendants.

Case No.: 2:17-cv-2869-GMN-BNW

**ORDER**

      Pending before the Court is Defendant Tristar Products, Inc. ("Tristar") and Zhongshan Jinguang Household Appliance Manufacture Co., Ltd.'s (collectively, "Defendants'") Motion for Attorneys' Fees, (ECF No. 239). Plaintiff Tawndra Heath ("Plaintiff") filed a Response, (ECF No. 245), to which Defendants filed a Reply, (ECF No. 251).

      Also pending before the Court is Plaintiff's Motion for New Trial, (ECF No. 240). Defendants filed an Objection, (ECF No. 243), and a Response, (ECF No. 247), to which Plaintiff filed a Reply, (ECF No. 254).

      Also pending before the Court is Plaintiff's Renewed Motion for Judgment as a Matter of Law, (ECF No. 241). Defendants filed a Response, (ECF No. 247), to which Plaintiff filed a Reply, (ECF No. 254).

      Also pending before the Court is Plaintiff's Motion for Relief, (ECF No. 246). Defendants filed a Response, (ECF No. 253), to which Plaintiff filed a Reply, (ECF No. 255).

For the reasons stated below, Defendants' Motion for Attorneys' Fees is **GRANTED**, and Plaintiff's Motion for New Trial, Motion for Judgment, and Motion for Relief are **DENIED**.

I. <u>**BACKGROUND**</u>

This case arises from injuries that Plaintiff suffered when the lid of her Power Pressure Cooker, Model No. PPC770 (the "Cooker")[1] allegedly exploded open after she used it to prepare corned beef brisket. (Sec. Am. Compl. ¶¶ 4–20, ECF No. 62); (Dep. Tawndra Heath 31:16–33:20, Ex. C to Mot. in Limine ("MIL"), ECF No. 82-3). Defendant Tristar was the seller and distributor of that Cooker. (Sec. Am. Compl. ¶ 9). Defendant Zhongshan Jinguang Household Appliance Manufacture Co., Ltd. ("Defendant Zhongshan") manufactured the Cooker. (*Id.* ¶ 10).

Plaintiff states that she prepared the corned beef brisket in the Cooker through two cooking cycles at her home. In the first cycle, she set the Cooker for a sixty-minute cook cycle, then "left for . . . Bible study." (Dep. Tawndra Heath 34:3–36:24, Ex. C to MIL). When she returned, she saw that the corned beef was not finished. She accordingly set it for a second cooking cycle—following the same steps of using the Cooker as the first cycle. (*Id.* 39:5–42:16). Plaintiff states that when she closed the Cooker's lid with each cycle, it did not take any force at all. (*Id.* 35:23–25).

After the first cycle, Plaintiff opened the lid easily and without issue. (*Id.* 41:3–12). For the second cycle, Plaintiff states that she approached the Cooker roughly fifteen to twenty minutes after it emitted a "beeping noise" to indicate the cook cycle was complete. (*Id.* 44:1–45:5). However, when she attempted to open the Cooker's lid, she claims that water exploded out onto her face, neck, chest, and arm. (*Id.* 53:23–56:19). Plaintiff then went to the hospital,

---

[1] The Cooker has three main components: a base, a removable inner pot, and a lid. (MSJ 4:12–20, ECF No. 78). "The lid has an internal circumferential gasket, two valves, and set of metal locking tabs." (*Id.*).

and received treatment for first, second, and third-degree burns. (Report of Benjamin Rodriguez, M.D., Ex. 3 to Resp., ECF No. 86-3).

Plaintiff alleges that Defendants had notice that the Cooker was likely defective with respect to the "lid safety interlock system." (Sec. Am. Compl. ¶ 12). Plaintiff claims that, despite this notice, Defendants continued to sell the Cooker while representing that the Model was a safe product. (*Id*. ¶ 14).

On October 12, 2017, Plaintiff initiated this lawsuit against Defendants in the Eighth Judicial District Court for Clark County, Nevada. (Compl. at 1, Ex. 1 to Pet. Removal, ECF No. 1-1). Defendants removed the case to this Court on November 15, 2017. (Pet. Removal, ECF No. 1). Plaintiff asserted four claims for relief against Defendants: (1) negligence; (2) breach of warranty; (3) strict products liability; and (4) violation of Nevada consumer protection laws. (Sec. Am. Compl. ¶¶ 21–58). She also sought punitive damages against Defendant. (*Id.* ¶¶ 59–64). The Court held a seven-day jury trial in August 2021. The jury ultimately returned a verdict in favor of Defendants. (*See* J., ECF No. 227). Defendants then filed the instant Motion for Attorneys' Fees, (ECF No. 239), and Plaintiff filed additional post-trial motions for relief, (ECF Nos. 240, 241, 246).

## II. LEGAL STANDARD

### A. MOTION FOR ATTORNEYS' FEES

Federal district courts calculate awards for attorneys' fees using the lodestar method set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The amount of the attorneys' fees must be determined on the facts of each case. *Id*. at 429. "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citation omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant,

adjust the lodestar to account for other factors which are not subsumed within it." *Id*.; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (enumerating factors district courts may consider in determining fee awards).

The party seeking an award of fees should submit evidence supporting the rates claimed and the hours worked. *Hensley*, 461 U.S. at 433; *see also Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) ("When a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence of the hours worked and the rate paid."). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

In reviewing a motion for attorneys' fees, the court will rely on its own experience to determine whether the amount requested is reasonable and based on the lodestar calculation. *See Ilick v. Miller*, 68 F. Supp. 2d 1169, 1176 (D. Nev. 1999) (noting that the court may rely on its own discretion in determining reasonableness of attorneys' requested fee award); *Hensley*, 461 U.S. at 437 (the district court has discretion in determining the amount of a fee award).

**B.    MOTION FOR RELIEF**

Under Rule 60(b), a court may, upon motion and just terms, "relieve a party . . . from a final judgment," on the ground that the "judgment is void[.]" Fed. R. Civ. P. 60(b)(4). A judgment is "void only if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or if the court acted in a manner inconsistent with due process of law." *In re Ctr. Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985). Additionally, under Rule 60(b), a court may relieve a party from a final judgment, order or proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; or

(6) any other reason justifying relief from the judgment. *Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000).

### III. DISCUSSION

The Court first addresses Plaintiff's Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion for Relief, before turning to Defendants' Motion for Attorneys' Fees.

**A.  MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR MOTION FOR NEW TRIAL, (ECF Nos. 240, 241)**

Plaintiff renews her Motion for Judgment as a Matter of Law, and in the alternative, brings a Motion for New Trial under Federal Rule of Civil Procedure 50(b). (*See* Mot. J., ECF No. 241); (*see also* Mot. New Trial, ECF No. 240). Specifically, Plaintiff seeks a new trial for two reasons: (1) Defendants' counsel inappropriately mentioned that Plaintiff is a Jehovah's Witness during opening statements; and (2) the Court's denial of Plaintiff's Motion for Judgment as a Matter of Law on Defendants' affirmative defenses unfairly prejudiced Plaintiff to overcome every undisclosed and unsubstantiated theory Defendants presented at trial. (Mot. J. at 2).

Under FRCP 50, a "movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." *See* Fed. R. Civ. Pro. 50(b). In ruling on the renewed motion, the court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. Fed. R. Civ. Pro 50(b)(1)–(3). The Ninth Circuit has held that a Rule 59(e) motion for reconsideration should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,

1  880 (9th Cir. 2009) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.
2  1999)).

3        Here, Plaintiff largely rehashes the same arguments she made in her initial, oral motion
4  for judgment as a matter of law and does not provide new information for the Court to
5  reconsider its denial. (*See* Trial Transcript, Day 6 ("Day 6 Transcript") at 182–214, ECF No.
6  230). Plaintiff first argues that the Court erred by finding that there was sufficient evidence at
7  trial supporting Defendants' two affirmative defenses—misuse and altered condition. (Mot.
8  New Trial 6:23–7:1). Defendants, according to Plaintiff, failed to depose any witnesses that
9  could support these defenses and their expert witness, Dr. Giachetti, did not opine in any way to
10 support the defenses. (*Id*. at 6–7). In its ruling at trial, the Court explained that Defendants
11 proffered sufficient evidence to support a defense for product misuse. (Day 6 Transcript at 209–
12 210). Ms. Heath testified on whether she followed or read all the instructions and warnings.
13 (*Id*. 209:17–22). She further stated that she could not recall if she properly released the
14 pressure. (*Id*. 209:23–210:3). Her testimony provided enough information such that the jury
15 could find that Plaintiff misused the pressure cooker. *See* Fed. R. Civ. Pro 50(a) ("[i]f a party
16 has been fully heard on an issue during a jury trial and the court finds that a reasonable jury
17 would not have a legally sufficient basis to find for the party on that issue, the court may grant
18 a motion for judgment as a matter of law against the party on a claim or defense.").

19       Plaintiff's second objection is that Mr. Ostermann, Defendant Tristar's counsel,
20 improperly mentioned Plaintiff's religious affiliation during opening statements. (Mot. New
21 Trial 15:15–17:23). During opening statements, Mr. Ostermann stated that Plaintiff "is a
22 devoutly religious woman, a Jehovah's Witness." (Trial Transcript, Day 2 ("Day 2 Transcript")
23 49:24–50:1, ECF No. 204). While improper, the Court does not find that Mr. Ostermann's
24 mention of Plaintiff's religion "clear error" to reverse the jury's verdict. *389 Orange Street*
25 *Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Even under Plaintiff's standard for

attorney misconduct in *Lioce v. Cohen*, 125 Nev. 1 (2008), Plaintiff does not explain how mentioning Plaintiff's religious affiliation is an "irreparable and fundamental error . . . that results in a substantial impairment of justice or denial of fundamental rights such that, but for the misconduct, the verdict would have been different." For the foregoing reasons, the Court denies Plaintiff's renewed Motion for Judgment as a Matter of Law and alternative Motion for New Trial.

### B.   MOTION FOR RELIEF, (ECF No. 246)

Plaintiff also argues that newly produced evidence—that Defendants knew Julius Heath, Plaintiff's husband, would not testify at trial—warrants new relief from judgment. (Mot. Relief at 1). On September 21, 2021, Plaintiff discovered that Defendants retained an investigator to locate Mr. Heath and concluded the day before opening statements that Mr. Heath could not be located to testify at trial. (*Id*. at 2–3). But Defendants, according to Plaintiff, still claimed during opening statements: "Plaintiff's husband is – was somebody who loved the unit. He used it all the time. We hope he's going to testify in this case, and we think if he does, you will hear directly from him how much he loved it and how often he used it." (Day 2 Transcript 48:1–4). This prejudicial misrepresentation, Plaintiff asserts, arises to attorney misconduct that warrants relief.

In determining whether to grant relief under Rule 60, the court must first consider whether the alleged information constitutes "newly discovered evidence" within the meanings of Rules 60(b)(2) and Rule 59. *See* Fed. R. Civ. Pro. 60; *see also Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211 (9th Cir. 1987). The Court must next consider whether the party seeking Rule 60(b) relief exercised "due diligence to discover the evidence. *Coastal Transfer Co.*, 833 F.2d at 211. Furthermore, "the newly discovered evidence must be of such magnitude that product of it earlier would have been likely to change the disposition of the case." *Id*.

Here, Plaintiff's argument fails because she does not explain how Mr. Heath's testimony would have affected the outcome of the case. Neither party called Mr. Heath at trial, even though Plaintiff listed Mr. Heath as a potential witness in her Joint Pretrial Order. (*See* JPTO, ECF No. 146). By focusing on the alleged attorney misconduct, Plaintiff crucially misses the mark by omitting any explanation as to the effect of Mr. Heath's testimony on the outcome of Plaintiff's case. *See United States v. Chapman*, 642 F.3d 1236, 1240 (9th Cir. 2011) (citing *United States v. Beggerly*, 524 U.S. 38, 47, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998)) ("Independent actions under Rule 60(b) are available 'only to prevent grave miscarriages of justice.'"). Because the newly discovered evidence must constitute evidence that is "likely to change the disposition of the case," the Court thus denies Plaintiff's Motion for Relief under Rule 60.

### C. MOTION FOR ATTORNEYS' FEES, (ECF No. 239)

Defendants move for attorneys' fees under Federal Rule of Civil Procedure 54(d)(2). (*See generally* Mot. Atty's Fees, ECF No. 239). Federal Rule of Civil Procedure 54(d)(2) allows a party to file a motion for attorneys' fees if it: (1) is filed within 14 days after judgment is entered; (2) identifies the legal basis for the award; and (3) indicates the amount requested or an estimate thereof. "A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).

Under NRCP 68(f), a party may recover attorneys' fees if the opposing party rejects an offer of judgment and fails to obtain a more favorable outcome. The purpose of the offer of judgment rule is to promote and encourage the settlement of lawsuits and save money for the court system, the parties, and the taxpayers. *Muihe v. A.N. Las Vegas Cab Co.*, 106 Nev. 664, 799 P.2d 559, 561 (Nev. 1990). The Ninth Circuit has held that a state's offer of judgment rule is substantive, and therefore a federal court sitting in diversity jurisdiction should follow the

state's offer of judgment rules. *MRO Communs., Inc. v. AT&T Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (citing *Alyeska Pipeline Serv. v. Wilderness Society*, 421 U.S. 240, 259, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)).  After a seven-day trial, the jury found in favor of Defendants. (J., ECF No. 227).  The Court therefore has discretion to issue attorneys' fees under NRCP 68(f).

When deciding whether to award penalties under the offer of judgment rule, the court's discretion is governed by the *Beattie* factors: "(1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer . . . was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount." *Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983).  No one *Beattie* factor is dispositive, and the court need not necessarily make explicit findings as to all of the factors. *Nat'l Union Fire Ins. v. Pratt and Whitney*, 107 Nev. 535, 815 P.2d 601, 606 (Nev. 1991); *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 283 P.3d 250, 258 (Nev. 2012).  In cases where the defendant is the offeree, courts look to whether the defenses were litigated in good faith. *Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 955 P.2d 661, 673 (Nev. 1998).

Upon review of the above factors, the Court finds that the *Beattie* factors weigh in favor of granting attorneys' fees to Defendants.[2]  Plaintiff argues the $150,000 offer was unreasonable in the amount and the timing because: (1) Tristar disclosed nearly 10,000 pages of new documents just weeks before the offer; (2) Plaintiff was set to depose two FRCP 30(b)(6) witnesses; and (3) Magistrate Judge Leen granted Plaintiff's Motion to File an Amended Complaint just a few weeks prior that included an additional punitive claim. (*See* Resp. to Mot.

---

[2] The parties do not dispute that Plaintiff brought her claims in good faith. (*See* Mot. Attys' Fees 5:20–22). Thus, the Court limits its below discussion to the remaining *Beattie* factors.

Attys' Fees 2:8–16). These new revelations, however, do not suggest that Defendant's offer of judgment was unreasonable. At the time Defendants offered Plaintiff $150,000, the case had been litigated for over a year and the parties' factual positions were sufficiently developed such that Plaintiff could properly assess the benefits and drawbacks of entering a settlement. Plaintiff additionally argues that the $150k offer was unreasonable because it was lower than Plaintiff's requested medical expenses.[3] Plaintiff, however, did not seek medical fees at trial. Her reliance on the calculated medical expenses as the marker for "reasonable fees" is thus unjustified. For the same reasons, the Court finds that Plaintiff's decision to reject the offer grossly unreasonable. This Court presided over this trial and noted, as did Defendants, that Plaintiff did not seek to recover medical expenses at trial and only sought damages and punitive damages. The fact that Defendants offered a $500,000 offer of judgment after the close of discovery and rulings on dispositive motions also does not demonstrate that this case was worth more than the original $150,000 offer such that Plaintiff's decision to reject the original offer was reasonable. Defendants offered a higher amount at a later stage in the litigation and the higher amount likewise could have reflected Defendants' desire to settle and not try the case.

Plaintiff lastly argues that Defendants' attorneys' fees are unreasonable and unjustified because Defendants failed to provide supporting documentation in their bill of costs. (Resp. to Mot. Atty's Fees at 7). Specifically, Plaintiff objects to: (1) $1,433.50 in fees conducting research, locating Mr. Heath, and trying to serve trial subpoena on someone Tristar argued it could not call at trial; and (2) $4,750 in fees associated with Osterman to travel to and from Las Vegas. (*Id*. 7:20–24, 8:1–6). Defendants, however, provided itemized descriptions of the work performed. (*See* Affidavit of Dawn Davis, Ex. A to Mot. Attys' Fees, ECF No. 239-1); (*see*

---

[3] Plaintiff's claimed present and future medical damages were $112,434.74 in past medical expenses and $50,000 in future medical expenses, totaling $162,434.74. (Resp to Mot. Attys' Fees 3:21–22). Defendants' offer was just under Plaintiff's requested medical damages.

*also* Affidavit of Michael Lopes, Ex. B to Mot. Attys' Fees, ECF No. 239-2); (*see also* Certification of David Osterman ("Osterman Certification"), Ex. C to Mot. Attys' Fees, ECF No. 239-3).  In particular, Mr. Osterman provided an itemized description of his travel to and from Las Vegas. (*See* Osterman Certification, ECF No. 239-3).

The fees also comply with the factors outlined in Local Rule 54-14.  Local Rule 54-14(a) of the District of Nevada provides that motions for attorneys' fees must include "[a] reasonable itemization and description of the work performed." D. Nev. LR 54-14(a).  In determining the reasonableness of an hourly rate, courts consider the experience, skill, and reputation of the attorney requesting fees. *See, e.g., Chalmers*, 796 F.2d at 1210.  A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community. *Id*. "Affidavits of the plaintiffs; attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).  However, declarations of the fee applicant do not conclusively establish the prevailing market rate. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).  Ideally, a court should consider counsels' affidavits including information about fee rates of other attorneys in similar practices, awards in comparable cases, counsel's experience and reputation level, and market rates. *See Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).

Here, Defendants properly review each of the factors and provide detailed lists of the attorneys' fees and costs in compliance with Local Rule 54-1.  The attorney rates are reasonable for attorneys in this District. *See Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013) (finding that $375–$400 is the reasonable hourly rate for a partner with over 35 years of experience in Las Vegas).  The hourly rates for defense counsel covered a large range:

- Snell and Wilmer hourly rates: $185.00 for associate attorneys to $285.00 for partner. (Davis Affidavit ¶ 5).

- Gordon Rees Scully Mansukhai hourly rates: $160.00 for paralegals, $340.00 for associate attorneys to $450.00 for partners. (Lopes Affidavit ¶ 5).

- Goldberg Segalla hourly rates: $125.00 for paralegals, $235.00 for associate attorneys to $300.00 for partners. (Osterman Certification ¶ 5).

"For the Las Vegas market, this Court has regularly awarded fees where the hourly rate at issue were $400 or less." *See Int'l Inst. of Mgmt. v. Org for Econ. Cooperation & Dev.*, No. 2:18-cv-01748-JCM-GWF, 2019 U.S. Dist. LEXIS 186907 at *16-*17 (D. Nev. Oct. 29, 2019); *see also Gonzalez-Rodriguez v. Mariana's Enterps.*, No. 2:15-cv-00152-JCM-PAL, 2016 U.S. Dist. LEXIS 92198 at *27 ("hourly rates of $450 and $650 per hour are well over the range of hourly rates approved in this district."). Given the experience of counsel and complexity of the case, the Court finds the range of rates reasonable.

      The hours Defendants' worked are likewise reasonable given the circumstances of this case. The parties engaged in substantive motion practice (e.g., motion for summary judgment and motions in limine), and tried this case over seven days. Defendants' request is properly supported by an itemized list detailing the amount of time spent on each task. (*See generally* Davis Affidavit); (*see generally* Lopes Affidavit); (*see generally* Osterman Certification). The remaining factors under Local Rule 54-14 weigh in favor of granting attorneys' fees. Indeed, another court in this District granted $106,140 in attorneys' fees incurred after the plaintiff rejected offers of judgment. *See Pleasant v. State Farm Fire & Cas. Co.*, No. 2:16-cv-01977-JAD-BNW, 2020 U.S. Dist. LEXIS 141791, at *1 (D. Nev. Aug. 7, 2020). That case was litigated over a three-day, non-jury trial over a single breach of contract claim. *Id*. Given that the present case was litigated over a seven-day, jury trial, an award of approximately $350,000 appears reasonable in this District. Accordingly, the Court grants Defendants attorneys' fees in the amount of $349,003.50 and costs of $85,536.34.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Attorneys' Fees, (ECF No. 239), is **GRANTED**. The Clerk of Court is instructed to enter a judgment awarding Defendants $349,003.50 in attorneys' fees and $85,536.34 in costs.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for New Trial, (ECF No. 240), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Renewed Motion for Judgment as a Matter of Law, (ECF No. 241), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Relief, (ECF No. 246), is **DENIED**.

**DATED** this __11__ day of September, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court